UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

PRASAD MEDEPALLI, an individual,

        Plaintiff,

   v.

MAXIMUS, INC., an entity of unknown origin; DOES 1 through 25, inclusive,

        Defendants.
_____/

NO. CIV. S-06-2774 FCD EFB

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, filed by defendant Maximus, Inc. ("Maximus").[1]  Plaintiff Prasad Medepalli ("Medepalli") opposes the motion.  For the reasons set for below, defendant's motion is GRANTED.

/////

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

1

**BACKGROUND**[2]

**A.   Parties**

Maximus is in the business of providing program management and consulting services to federal, state, and local governments. (PRUF ¶ 1.)  Part of its business includes contracting with state governments to provide various public services, including assistance in delivery of Temporary Assistance for Needy Families, Medicare/Medicaid, food stamps, and other government benefits and plans.  (PRUF ¶ 1.)

Medepalli was hired by Maximus on or about April 23, 2001, as a Senior Developer with a starting salary of $82,250 per year. (PRUF ¶ 5.)  The prerequisites for the position included, at a minimum, a bachelor's degree in computer science, or a related computer degree at a university, and three to five years of business application development, including the ability to program with Oracle Designer, PL/SQL, and other Oracle development tools.  (PRUF ¶ 5.)  Medepalli was hired based on his education and experience.  (PRUF ¶ 5.)  He held three degrees (a bachelor's degree in chemistry, a master's degree in management studies; and a master's degree in computer information systems) and had received certification from Oracle Corporation on PL/SQL programming languages.  (PRUF ¶¶ 2-3.)  Medepalli also had eight years of experience in computer code development work, as well as two years of experience teaching college computer programming courses.  (PRUF ¶ 4.)

---

[2]   Unless otherwise noted, the facts herein are undisputed.  (See Pl.'s Resp. to Def.'s Stmt. of Undisputed Facts, filed Mar. 18, 2008 ("PRUF").)

1  **B.    <u>Job Description</u>**

2       Ninety percent of Medepalli's work was developing computer
3  code for business applications used by Maximus or Maximus'
4  clients.  (PRUF ¶ 28.)  Code development is intricate work that
5  required Medepalli to use his intellectual skills to develop
6  computer code so that the software program would operate as
7  contracted for by Maximus' clients.  (PRUF ¶ 9.)  How the code
8  was written and put together by Medepalli was critical in the
9  performance of business applications.  (PRUF ¶ 24.)

10      As a Senior Developer, Medepalli wrote computer code that
11 used large, complex social services formulas to work with
12 millions of lines of data and volumes of information.  (PRUF ¶
13 24.)  After writing the code, Medepalli would then test and
14 analyze the code to ensure that it was working properly.  (PRUF ¶
15 26.)  Medepalli believes he was one of the top developers at
16 Maximus, and other developers came to him for help.  (PRUF ¶ 27.)

17      Medepalli received his assignments from supervisors, who
18 gave him instructions on the specific tasks he was to complete.
19 (Pl.'s Stmt. Additional Disputed Facts ("PADF"), filed Mar. 18,
20 2008, ¶ 7.)  Although Medepalli was required to follow Maximus'
21 established standards and templates as to appearance and
22 operation of the final product, (PADF ¶¶ 4, 6), he had a degree
23 of independence in determining how to develop the code, (PRUF ¶
24 23).  While with Maximus, Medepalli worked on three main
25 projects: the Utah Medicaid Managed Care System ("MMCS"), the
26 Utah Drug Rebate Program, and California Healthy Families.  (PRUF
27 ¶ 6.)

28 /////

### 1. MMCS

The MMCS program manages the care of Medicaid clients, enrolls clients in managed care plans, and calculates the monthly capitation amounts for each enrollee based on enrolled client information and rate cell information maintained by the state of Utah. (PRUF ¶ 7.) Medepalli worked on the MMCS project to develop applications that would be used to support the MMCS program. (PRUF ¶ 8.) Medepalli's work on the MMCS project was "complex" and included working on a computer application that would compute the amount payable to healthcare providers based on the numerous rules, regulations, and various contracts with different healthcare providers. (PRUF ¶ 11.) Medepalli was also required to work with social experts to understand the requirements of social services. (PRUF ¶ 10.)

### 2. Utah Drug Rebate Program

The Drug Rebate Program was a system used by Utah to calculate and invoice rebates from various pharmaceutical companies. (PRUF ¶ 14.) Maximus was contracted to develop a web-based system for Utah's Medicaid agencies to calculate and invoice rebates earned from various pharmaceutical companies. (PRUF ¶ 15.) Plaintiff's work on the Drug Rebate Program was to do data modeling, user interface work, and work on the business requirements document. (PRUF ¶ 16.)

### 3. California Healthy Families

California contracted with Maximus to provide support for its Healthy Families program. (PRUF ¶ 17.) The program contracts with numerous healthcare providers to provide care for children. (PRUF ¶ 18.) Medepalli developed various business

4

applications and created computer code necessary to administer and support the Healthy Families program.  (PRUF ¶ 19.)  His work included reworking the computer code developed for the Utah programs to conform with the different rules and regulations in California, such as how eligibility and payment of healthcare providers needed to be determined.  (PRUF ¶ 20.)  Medepalli also worked on developing the code for user interface, the screens that people use to enter information into the computer.  (PRUF ¶ 21.)

**C.   Present Action**

Medepalli worked as a Senior Developer for Maximus between April 23, 2001, and April 30, 2004.  (PRUF ¶ 30.)  During that time, Medepalli's monthly salary was at least two times the state minimum wage based on a forty-hour work week, and he was paid as an exempt employee.  (PRUF ¶¶ 31-32.)  Medepalli was laid off on April 30, 2004.  (PRUF ¶ 33.)  Medepalli filed a complaint against Maximus on October 3, 2006, alleging four causes of action under the California Labor Code: (1) failure to pay overtime compensation; (2) failure to provide accurate itemized pay statements; (3) failure to provide meal periods; and (4) failure to provide rest periods.  The complaint also alleged a fifth cause of action for conversion.  Maximus now moves for summary judgment.

/////
/////
/////
/////
/////

# STANDARD[3]

The Federal Rules of Civil Procedure provide for summary judgment where "the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed. R. Civ. Proc. 56(c); see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the nonmoving party. See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party.

---

[3] Plaintiff recites the California standard for summary judgment in its responsive brief. However, the federal standard for summary judgment governs. Fed. R. Civ. Proc. § 1.

See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. See Nissan Fire & Marine, 210 F.3d at 1107. Instead, through admissible evidence the nonmoving party "must set for specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e).

**ANALYSIS**

**I. Statute of Limitations**

Maximus first argues that Medepalli's claims are barred in whole or in part by the applicable statute of limitations.[4] Under California Code of Civil Procedure § 338(a), a three-year statute of limitations applies to claims for wages. A one-year statute of limitations governs claims for penalties. Cal. Civ. Proc. Code § 340(a); see also Murphy v. Kenneth Colde Prods., 40 Cal. 4th 1094, 1102 (2007) (discussing applicable statute of limitations under wage and hour law).

**A.   First Cause of Action: Failure to Pay Overtime**

Medepalli's first cause of action alleges failure to pay overtime and, therefore, is a claim for wages. See Cal. Labor Code 204(b)(1). As such, it is subject to the three-year statute of limitation in § 338(a) of the Code of Civil Procedure. Because the complaint was filed on October 3, 2006, the court finds the first claim for relief is barred to the extent it seeks to recover for violations prior to October 3, 2003. Therefore,

---

[4] Plaintiff did not address defendant's statute of limitation argument. This silence could be interpreted as a non-opposition to defendant's argument. However, for the purpose of completeness, the court will address the merits of this argument.

7

plaintiff may only seek relief for the six month period between October 3, 2003, and April 30, 2004.

### B. Second Cause of Action: Failure to Provide Itemized Pay Statements

Medepalli's second cause of action for failure to provide itemized pay statements is a claim for penalties.  See Cal. Labor Code § 226(e) ("An employee suffering injury [for failure to provide itemized statements] is entitled to recover . . . [damages] not exceeding an aggregate *penalty* of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.") (emphasis added); see also Murphy, 40 Cal. 4th at 1108 ("In section 226, the Legislature imposed a *penalty* on employers who fail to provide itemized wage statements that comply with the Labor Code.") (emphasis added). Accordingly, it is subject to the one-year statute of limitation in Code of Civil Procedure § 340(a).  Because the complaint was filed more than a year after plaintiff was terminated, the court finds Medepalli's second cause of action is barred in its entirety.

### C. Third Cause of Action: Failure to Provide Meal Periods

Medepalli's third cause of action alleges failure to provide meal periods.  This claim for wages is subject to a three-year statute of limitation.  See Cal. Civ. Proc. Code § 338(a); Cal. Labor Code § 226.7 ("If an employee fails to provide an employee a meal period . . . the employer shall pay the employee one additional hour of pay at the employer's regular rate of compensation . . ."); see also Murphy, 40 Cal. 4th at 1110-11 (holding § 226.7's "additional hour of pay" constitutes a wage).

1  Thus, similar to the first cause of action, Medepalli's claim is
2  barred to the extent it seeks compensation for violations prior
3  to October 3, 2003.
4      **D.    Fourth Cause of Action: Failure to Provide Rest Periods**
5      Medepalli's fourth cause of action alleges failure to
6  provide rest periods.  Like Medepallis' third claim for relief,
7  this claim also seeks compensation for time worked.  See Cal.
8  Labor Code § 226.7(b) ("If an employee fails to provide an
9  employee a meal period . . . the employer shall pay the employee
10 one additional hour of pay at the employer's regular rate of
11 compensation . . . .").  It therefore is a claim for wages.  See
12 Cal. Civ. Proc. Code § 338(a); Murphy, 40 Cal. 4th at 1110-11
13 (holding § 226.7's "additional hour of pay" constitutes a wage).
14 As such, the claim is barred to the extent Medepalli seeks
15 compensation for violations occurring prior to October 3, 2003.
16     **E.    Fifth Cause of Action: Conversion**
17     Medepalli's fifth and final cause of action for conversion
18 is subject to a three-year statute of limitations under § 338(c)
19 of the Code of Civil Procedure.  See Bono v. Clark, 103 Cal. App.
20 4th 1409, 1433 (2002) ("As a general rule, the statute of
21 limitations for conversion is triggered by the act of wrongfully
22 taking property.").  Thus, the fifth claim is also barred to the
23 extent Medepalli seeks recovery for acts prior to October 3,
24 2003.
25     In sum, the court finds plaintiff's first, third, fourth,
26 and fifth claims for relief are barred to the extent they seek
27 recovery for wage and hour law violations occurring prior to
28 October 3, 2003.  Therefore, plaintiff may only seek recovery

9

based upon these claims to the extent the alleged violations occurred in the six month period between October 3, 2003, and April 30, 2004, when plaintiff's employment with defendant was terminated. With respect to plaintiff's second claim for relief, the court finds the applicable statute of limitation has run. As such, defendant's motion for summary judgment regarding plaintiff's second claim for relief is GRANTED.

**II.  Wage Order Exemptions**

Maximus next argues that Medepalli is exempt from wage and hour laws as a professional employee.[5] The California Industrial Welfare Commission ("IWC") is authorized to promulgate orders regulating wages, hours, and conditions of employment for employees throughout California. Nordquist v. McGraw-Hill Broadcasting Co., Inc., 32 Cal. App. 4th 555, 562 (1995). Pursuant to this authority, the IWC has promulgated seventeen different "wage orders" that apply to various groups of employees. Cal. Code Regs. tit. 8, §§ 11010-11170. At issue in this case is IWC Wage Order No. 4-2001, regulating, *inter alia*, overtime, itemized pay statements, meal periods, and rest periods. Cal. Code Reg. tit. 8, § 11040(3)(A), (7)(B), (11)(A), 12(a). IWC Wage Order No. 4-2001 exempts "persons employed in administrative, executive, or professional capacities" from its provisions. Cal. Code Reg. tit. 8, § 11040(1)(A)(3). The exemptions are affirmative defenses, and, therefore, the burden

---

[5] Maximus also argues Medepalli is exempt as an administrative employee. Because, as set forth *infra*, the court finds Medepalli is exempt as a professional employee, it need not address whether Medepalli meets the requirements of the administrative exemption.

10

is on the employer to prove that an employee is exempt. <u>Ramirez v. Yosemite Water Co.</u>, 20 Cal. 4th 785, 794-95 (1999).

In order to qualify under the "professional" exemption, an employer must show that an employee: (1) received a monthly salary at least two times the state minimum wage based on a forty hour work week; (2) performed work requiring knowledge of an advanced type in a field customarily acquired by prolonged course of specialized intellectual instruction and study; (3) performed work that was predominately intellectual and varied in character and is of such character that the output produced could not be standardized in relation to a given period of time; (4) exercised discretion and independent judgement customarily and regularly; and (5) primarily engaged in duties that meet the test of the exemption. Cal. Code Reg. tit. 8, § 11040(1)(A)(3)(b)-(d).

**A.   Monthly Salary**

Maximus asserts Medepalli meets the first prong of the professional exemption because, at all times during his employment, Medepalli was paid at least twice the state minimum wage based on full-time employment. Specifically, Maximus asserts Medepalli was paid $2,166.67 per month in 2001 and was paid $2,340 per month from 2002 to 2004. Medepalli does not dispute these facts. The minimum wage requirement in 2001 was $6.25 per hour, or $1,000 per month. <u>See</u> Cal. Code Reg. tit. 8, § 11040(4) (2001). From 2002 to 2004, the minimum wage requirement was $6.75 per hour, or $1,080 per month. <u>See</u> Cal. Code Reg. tit. 8, § 11040(4) (2004). Thus, Medepalli's wages during his employment were at least twice the monthly minimum wage requirement based on a forty-hour work week. Accordingly,

11

the court finds Medepalli meets the first criteria for the professional exemption.

### B. Advanced Knowledge

Maximus contends Medepalli also meets the second prong of the professional exemption because he was engaged in an occupation that required advanced knowledge obtained through a prolonged course of study. The requirements for plaintiff's position at Maximus included, at a minimum, a bachelor's degree in computer science and three to five years of experience in business application development, including the ability to program with Oracle Designer, PL/SQL, and other Oracle development tools. Medepalli met these criteria by obtaining a master's degree in computer science and by receiving certification from Oracle Corporation in PL/SQL. Medepalli does not dispute that he acquired his knowledge in computer code, business applications, and data modeling through a prolonged course of study. Nor does Medepalli dispute that this course of instruction was in a field of advanced and specialized knowledge. The court therefore concludes Medepalli meets the second element of the professional exemption.

### C. Intellectual, Varied Work

Maximus next contends the third criteria for the professional exception is met because Medepalli's work was highly complex and varied in nature. IWC Wage Order No. 4-2001 expressly incorporates certain regulations of the Federal Labor Standards Act ("FLSA") effective as of the date the wage order was issued. Among the provisions incorporated by the wage order is § 541.306, which provides the following example of an employee

12

engaged in intellectual and varied work, as opposed to routine work:

> While a doctor may make 20 physical examinations in the morning and perform in the course of his examinations essentially similar tests[, i]t requires not only judgment on his part but a continual variety of interpretation of the tests to perform satisfactory work.  Likewise, although a professional chemist may make a series of similar tests, the problems presented will vary as will the deductions to be made therefrom.

See 29 C.F.R. § 541.306.[6]

Applying these principles to the present case, the court finds no genuine issue of material fact exists as to whether Medepalli's work was intellectual and varied.  The undisputed evidence demonstrates that, although Medepalli had certain over-arching standards or templates for the appearance and operation of the final product, the codes and applications Medepalli used to achieve the required results were within his discretion. Indeed, Medepalli does not dispute that he exercised a degree of discretion in his work.

Rather, Medepalli contends that his work was routine. However, he proffers no evidence to support this contention. Moreover, the undisputed facts establish that each project Medepalli worked on required different applications.  The MMCS

---

[6] The court notes that the U.S. Department of Labor amended the FLSA's implementing regulations effective August 23, 2004, repealing § 541.306.  See Combs v. Skyriver Commc'ns, Inc., 72 Cal. Rptr. 3d 171, 182 n.5 (Ct. App. 2008).  However, the wage order incorporates the FLSA regulations as they existed on January 1, 2001, the date the wage order was issued.  Id. at 181. Because § 541.306 was in force at that time, its provisions are incorporated into the wage order.  Moreover, § 541.306 was amended in August of 2004, well after plaintiff's employment with defendant was terminated.  As such, the subsequent repeal of § 541.306 does not affect its applicability in this case.

project required computer applications that computed the amount payable to healthcare providers based on numerous rules, regulations, and contract provisions. The Utah Drug rebate program, however, required a web-based system that calculated and invoiced drug rebates. Finally, the California Healthy Families program required modification of the Utah programs to conform to the different rules and regulations of California.

The only thing routine about Medepalli's work appears to be the fact it was predominately code development. However, as § 541.306 explains, the test is not whether the same type of work is done, but whether the work is intellectually varied. In this case, Medepalli may have spent ninety percent of his time developing codes, but the intellectual skills required to develop those codes varied depending on the needs of the client and the number of people working on the project. As Medepalli himself explained, "it's almost like sentence structure . . . [y]ou can make it [sic] elegant and easy to read code, which I used to do, and you can also make it really complex so that nobody can understand." (See Pl.'s Resp. to Def.'s Stmt. of Undisputed Facts, filed Mar. 18, 2008, at 27 (quoting Medepalli's Deposition at 134:9-19).)[7] Medepalli further clarified, "That's where you have independence. The other programmer uses a 4 loop, I use a Y loop, something like that." (Deposition of Prasad Medepalli, Ex. A to Declaration of Brian Mills, filed Feb. 28, 2008, ("Medepalli

---

[7] The court notes that plaintiff's proffered transcript of his deposition is not properly authenticated in accordance with Federal Rules of Evidence 901. However, since defendant does not object to this evidence, the court assumes for purposes of this motion that it is a correct copy of plaintiff's deposition transcript.

Depo.") at 140:1-3.)[8]  Thus, like a doctor performing similar tests to diagnose different and diseases and recommend different treatments, the computer codes and applications Medepalli developed were unique to the needs of each of Maximus' clients. No reasonable trier of fact could conclude based on the evidence that Medepalli's work was routine, and his bald[9] assertion otherwise is not sufficient to overcome summary judgment.  Cf. Powell v. American Red Cross, 518 F. Supp. 2d 24, 40 (D.D.C. 2007) (holding registered nurse satisfied the professional exemption where plaintiff did not dispute the tasks she performed but rather the characterization of those tasks as intellectual and varied).[10]  The court therefore finds that Medepalli meets the third prong of the professional exemption.

### D.  Exercise of Discretion

Maximus argues the fourth element of the professional exemption is met because Medepalli customarily and regularly

---

[8] Moreover, Medepalli admits that each code developer was responsible for his or her own piece of the project, which required the developers to integrate their own independent work into the independent work of others.  (Deposition of Prasad Medepalli, Ex. A to Declaration of Brian Mills, filed Feb. 28, 2008, ("Medepalli Depo.") at 52:8-19.)  This also influenced choice of codes.

[9] A much stronger adjective could be used to describe plaintiff's brief opposing summary judgment.  (See Pl.'s P. & A., filed Mar. 18, 2008.)  Plaintiff's argument against a finding of exemption, under either the professional or administrative exemptions, is a sum total of three pages and contains a single citation to Sav-on Drug Stores, Inc. v. Superior Court, 34 Cal. 4th 319, 324-25 (2004), for the proposition that defendant carries the burden of showing an exemption.

[10] Because California wage and hour laws are modeled on federal laws, federal cases provide persuasive guidance for the court.  Nordquist v. McGraw-Hill Broadcasting Co., 32 Cal. App. 4th 555, 562 (1995).

exercised discretion in developing codes. As with the third prong of the exemption, IWC Wage Order No. 4-2001 incorporates provisions of the FLSA that provide guidance. Section 541.207(a) defines "discretion" as "the comparison and the evaluation of possible courses of conduct and acting or making after the various possibilities have been considered." 29 C.F.R. § 541.207(a). With respect to computer programmers and systems analysis, § 541.207(c)(7) states:

> In the data processing field a systems analyst is exercising discretion and independent judgment when he *develops methods to process*, for example, accounting, inventory, sales, and other business information by using electronic computers. He also exercises discretion and independent judgment *when he determines the exact nature of the data processing problem, and structures the problem in a logical manner* so that a system to solve the problem and obtain the desired results can be developed. Whether a computer programer is exercising discretion and independent judgment depends on the facts in each particular case.

29 C.F.R. § 541.207(c)(7) (emphasis added). Thus, an employee in the computer industry exercises discretion by analyzing a problem and determining the steps to reach a solution. Moreover, § 541.207(e) makes clear that the exercise of discretion does not require "the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review." 29 C.F.R. § 541.207(e). Rather, "[t]he fact an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion." Id.

Based on these principles, the court finds there is no genuine issue of fact as to Medepalli's customary and regular exercise of discretion in developing codes. The undisputed facts

16

establish that Medepalli exercised a large degree of discretion in deciding what codes to use for a particular project and how those codes would be written. Indeed, Medepalli's own testimony supports the conclusion he customarily and regularly exercised independent judgment:

> My boss would say "You are going to work on this one, this piece." So then we have a meeting and discuss about this. Then he will actually tell you--this person will give you the business rules or something. Some document. Then you read that and then discuss with me. And finally he'll tell how you want to implement the system, what kind of technology you should be using, whether would we do a form or best process. He would tell you "This is what I want you to do." *Beyond that, just write the code to make that happen*, what he wants, "This is what I want to see," *so you make that happen*.

(Medepalli Depo. at 49:17-50:6 (emphasis added).) Since Medepalli spent ninety percent of his time developing code, and the codes developed were entirely within his judgement based on the particular needs of Maximus' clients, the court finds as a matter of law Medepalli customarily and regularly exercised discretion.

Medepalli argues he did not exercise discretion within the meaning of the professional exemption because he had no control over the assignments he received or the end product. However, absolute discretion is not required in order for this exemption to apply. Rather, discretion is defined as making a decision based on the comparison and the evaluation of possible courses of conduct. 29 C.F.R. § 541.207(a). Here, Medepalli developed code based on the specifications required by the client. He was not required to develop any particular code by any particular means; he just had to "make it happen." In other words, Medepalli did not control the final product, but he did control the means by

17

which to achieve that product. Such control is sufficient to satisfy the professional exemption's fourth prong. Cf. Combs v. Skyriver Commc'ns, Inc., 72 Cal. Rptr. 3d 171, 190 (Ct. App. 2008) (holding employee that spent seventy percent of his time troubleshooting high-speed, wireless, broadband internet network and had the authority to determine the course of action to correct problems customarily and regularly exercised discretion); Shillinglaw v. System Works, Inc., 1993 WL 603289, at *4 (N.D. Ga. 1993) (holding a computer programmer/analyst that exercised discretion in less than twenty percent of the work performed satisfied exemption under federal labor standards).[11]

Medepalli also contends he did not exercise control because he was "micromanaged." He argues that he was subject to the direct supervision of his superiors, who reviewed his work and asked for modifications. However, as set for above, the exercise of discretion does not require absolute discretion. 29 C.F.R. § 541.207(e). An employee can exercise discretion even if his superiors overrule his decisions, review his work, or ask for alterations of his work. Id.; cf. Zacek v. Automated Sys. Corp., 541 S.W.2d 516, 519-20 (Tex. Ct. App. 1976) (affirming trial court's finding computer systems analyst exercised discretion sufficient to qualify for federal labor standards exemption despite oversight by supervisor). Accordingly, the court finds

/////

---

[11] The court notes that the cases cited throughout this section deal with the administrative exemption, as opposed to the professional exemption. However, to the extent the two standards look at similar factors, the cases provide persuasive support for the court's conclusion.

that Medepalli meets the fourth prong of the professional exemption.

### E. Primarily Engaged

Maximus argues Medepalli meets the final prong of the professional exemption because he was primarily engaged in computer coding during his employment. Medepalli does not dispute that he spent ninety percent of his time developing code. Thus, the court finds Medepalli meets the final criteria for application of the professional exemption.

Because the court finds as a matter of law Medepalli has met all elements of the professional exemption, Maximus is not required to comply with the provisions of IWC Wage Order No. 4-2001. Accordingly, defendant's motion for summary judgment on the first, third, and fourth causes of action is GRANTED.

## III. Conversion

Maximus contends Medepalli's fifth claim for relief fails as a matter of law because plaintiff was an exempt employee. The court agrees. Medepalli's claim for conversion is premised on Maximus' failure to pay overtime wages and failure to compensate Medepalli for missed meal and rest periods. However, an exempt employee is not entitled to overtime, meal periods, or rest periods. Because Medepalli is an exempt employee, defendant's motion for summary judgment on the fifth cause of action is GRANTED.

/////
/////
/////
/////

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment is GRANTED. The Clerk of the court is directed to close this file.

IT IS SO ORDERED

DATED: April 8, 2008.

_____
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE